**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ESCAPEX IP, LLC | Civil Action No. 1:23-cv-10839 |
| *Plaintiff*, | |
| v. | |
| GOOGLE LLC, | **GOOGLE LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS ESCAPEX IP, LLC'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)** |
| *Defendant*. | |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     BACKGROUND ................................................................................................... 3

     A.     The Asserted Patent ................................................................................... 3

     B.     The Complaint's Direct And Indirect Infringement Claims Against Google . 5

     C.     Google's February 12, 2024 Letter To EscapeX ............................................ 12

III.    LEGAL STANDARDS ........................................................................................ 14

IV.    ARGUMENT ........................................................................................................ 16

     A.     EscapeX Has Failed To Allege A Plausible Direct Infringement Claim ........ 16

         1.    EscapeX Has Failed To Plead That Super Chat Has The Required "First Plurality Of Engagements" From A First User Or A "Second Plurality Of Engagements" From A "Second User" ........................................................ 17

         2.    EscapeX Has Failed To Plead The Required Indication Of A Plurality Of Engagements ............................................................................................. 17

         3.    EscapeX Has Failed To Plead That Super Chats Are Uncapped ............. 18

     B.     EscapeX's Indirect Infringement Claims Should Also Be Dismissed For Lack Of A Viable Direct Infringement Claim And Because They Are Contradicted By Their Supporting Exhibit .......................................................................... 19

V.      CONCLUSION ..................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
   377 U.S. 476 (1964)................................................................................................11, 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................................14

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007).....................................................................................................1, 14

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,
   757 F.2d 523 (2d Cir.1985)..........................................................................................15

*Bot M8 LLC v. Sony Corp. of Am.*,
   4 F.4th 1342 (Fed. Cir. 2021) .......................................................................................14

*In re Bristol–Myers Squibb Sec. Litig.*,
   312 F. Supp. 2d 549 (S.D.N.Y. 2004)...........................................................................15

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)....................................................................................14, 15

*D & A Family Deli Inc. v. United States*,
   No. 23-cv-2231 (AT), 2024 WL 81571, 2024 WL 81571 (Jan. 8, 2024).........................15, 18

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011)................................................................................................11, 19

*In re Initial Public Offering Securities Litigation*,
   241 F.Supp.2d 281 (S.D.N.Y. 2003).............................................................................15

*Invincible IP LLC v. SAS Institute Inc.*,
   22-cv-4490 (AKH), 2022 WL 3668322 (S.D.N.Y. Aug. 25, 2022) .................................16, 17

*Limelight Networks, Inc. v. Akamai Technologies, Inc.*,
   572 U.S. 915 (2014)......................................................................................................19

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F.Supp. 2d 371 (S.D.N.Y. 2001)............................................................................15

*In re MBIA, Inc., Sec. Litig.*,
   700 F. Supp. 2d 566 (S.D.N.Y. 2010)...........................................................................20

*NXIVM Corp. v. Foley*,
   No. 1:14-cv-1375, 2015 WL 12748008 (S.D.N.Y. Sep. 17, 2015) .........................................15

*Perry v. NYSARC, Inc.*,
    424 F. App'x 23 (2d Cir. 2011) .............................................................20

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
    215 F.3d 1246 (Fed. Cir. 2000)...............................................................16

*Sobek v. Quattrochi*,
    No. 03-CV-10219, 2004 WL 2809989 (S.D.N.Y. Dec. 8, 2004) ............................20

**Statutes and Rules**

28 U.S.C. § 1927.............................................................................13

35 U.S.C. § 112................................................................................5

35 U.S.C. § 271...............................................................................16

35 U.S.C. § 285...............................................................................12

Fed. R. Civ. P. 8..............................................................................13

Fed. R. Civ. P. 12...........................................................................1, 14

Fed. R. Civ. P. 59(e) .........................................................................12

**Other Authorities**

*EscapeX IP LLC v. Google LLC*, Case No. 22-cv-08711-VC (Aug. 15, 2023),
    Order (ECF No. 57) ......................................................................12

*EscapeX IP LLC v. Google LLC*, Case No. 22-cv-08711-VC (Feb. 2, 2024), Order
    (ECF No. 87)............................................................................13

Defendant Google LLC ("Google") respectfully submits this brief in support of its motion and notice of motion to dismiss EscapeX IP, LLC's ("EscapeX") Complaint (ECF No. 1, "Compl.") alleging that it directly and indirectly infringes at least claim 23 of U.S. Patent No. 10,474,687 (the "'687 patent"). *See* Compl. Ex. A (ECF No. 1-1).

## I.    INTRODUCTION

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). (internal quotation marks omitted). EscapeX does not meet this basic standard in its Complaint. EscapeX claims that the "Super Chat" feature on YouTube's livestreaming video platform infringes the '687 patent. *See* Compl. ¶ 12 & Ex. B (ECF No. 1-2) (claim chart)). Super Chat lets viewers of a YouTube livestream pay a fee to pin a comment made during a livestreamed performance so that the comment does not scroll down and off the screen when other viewers leave other comments. That way, the comment remains visible during the stream, instead of disappearing amidst the flood of other comments from other viewers. *See id.*[1]

The '687 patent has 24 claims, and EscapeX relies on its claim 23 to provide the factual allegations to support its infringement claim against Super Chat. Compl. at ¶ 12 & Compl. Ex. B. But EscapeX fails to plead the facts needed to support a plausible infringement claim. Claim 23, like every other claim of the '687 patent, requires that users pay "resources" (*e.g.*, money) in

---

[1] A discussion of Super Chat's functionality is in Exhibit 5 to the Declaration of Jeff Barron ("Barron Decl."), which is a copy of a public Google webpage relied upon by EscapeX for its claims. *See Kemp v. N.Y.C. Dep't of Health & Mental Hygiene*, 18-cv-5453 (BMC) (PK), 2019 WL 111045, at *4 n.3 (E.D.N.Y. Jan. 4, 2019) ("In the context of a Rule 12(b)(6) motion, a complaint is deemed to incorporate annexed documents, and a defendant is permitted to submit additional documents on the motion if the documents annexed to plaintiff's pleading tell only part of the story.") (citation omitted).

exchange for the opportunity to leave an "***uncapped*** … ***plurality*** of engagements" on a given piece of "content". Compl. Ex. B at 24-1, 24-5 & 24-10 (emphasis added).[2] It also requires that users receive, "via user interface," an "***indication***" of their desire to "obtain a plurality of engagements." *Id.* at 24-5 (emphasis added). EscapeX alleges that a YouTube livestream is the "content" and that a Super Chat is an "engagement." *Id.* at 23-2 *et seq.* (depicting a screenshot of a recorded livestream). But EscapeX fails to allege that **(1)** users leave "a plurality of engagements" during the same livestream; **(2)** that any "user interface" displays an "indication" of a user's desire to leave more than ones Super Chat, *e.g.*, to "obtain a plurality of engagements"; or **(3)** that a Super Chat user's engagements are "uncapped." All of these are necessary elements to plead an infringement claim. Indeed, EscapeX identifies only a ***single*** Super Chat from each user—only one alleged "engagement," and not the required "plurality"—and completely ignores the requirement that it identify where, if anywhere, the system receives, "via user interface," an "indication" of a user's desire to "obtain a plurality of engagements." Moreover, Super Chats are ***capped***—there are limits on how many Super Chats can be left by a user across all livestreams on a daily and weekly basis—not "uncapped" as the claims require.  EscapeX fails to plead facts demonstrating that it is plausible that Super Chats are "uncapped" when the Google website cited in the Complaint explicitly states that Super Chats are ***capped***.

EscapeX has thus failed to plead the elements of direct infringement and has, in fact, pleaded its way out of Court. But that is not the only way in which EscapeX's pleadings contradict themselves and support dismissal of its Complaint. EscapeX also alleges that it notified Google of the '687 patent when it gave the white paper attached to its Complaint as Exhibit C to Lyor Cohen

---

[2] The citations to Exhibit B to the Complaint refer to the panel numbers adopted by EscapeX and located in the "Row" column of Exhibit B.

on March 22, 2016, when he was working for a former employer. *See* Compl. at ¶¶ 7, 14 & Ex. C (ECF No. 1-3). But that is impossible. Among other things, the white paper that EscapeX contends it delivered to Mr. Cohen in March 2016 identifies the '687 patent by its full patent number and discusses the purported invention. *See* Compl. Ex. C at 13. The '687 patent did not issue until November 12, **2019**—over three years **after** the white paper was supposedly given to Mr. Cohen. Compl. at ¶ 8. Indeed, the **application** for the '687 patent was not even filed until December 5, 2016, almost nine months **after** EscapeX's alleged meeting with Mr. Cohen. *See* Ex. A ('687 patent) at 2 (the filing date on the cover page of the patent).[3] The white paper could not have been given to Mr. Cohen in 2016; it did not exist at the time.

Google pointed out these defects and contradictions, and others, to EscapeX and its counsel in a letter dated February 12, 2024 (nearly a month ago). Barron Decl., Ex. 1. Rather than dismiss the Complaint, EscapeX provided a meandering response that failed to address the flaws in its infringement claim and highlighted new flaws in its claims. *Id*., Ex. 2. At the very least, EscapeX, once given notice, should have immediately amended its Complaint to correct the contradictory allegations. Faced with EscapeX's and its counsel's refusal to correct a facially false pleading, Google is left with no choice but to seek the dismissal of this action in its entirety.

## II.   BACKGROUND

### A.   <u>The Asserted Patent</u>

The '687 patent is entitled "System and Method of Aggregating Networked Social Content and Facilitating Uncapped Engagement in a Networked Virtual Environment." The '687 patent explains that its field of invention involves "aggregating networked social content and facilitating uncapped engagement in a networked virtual environment in exchange for user resources." '687

---

[3] Hereafter, this brief refers to Exhibit A as simply the '687 patent.

patent at col. 1:20-24. Its "BACKGROUND OF THE INVENTION" section explains that there is a "vast amount of content available through networked virtual environments," such as "social media platforms," and "it is difficult for a user to get noticed or otherwise be distinguished from other users." *Id.* at col. 1:27-31.

The '687 patent references the "like" feature on Facebook as an example of a user engagement. *Id.* at col. 1:33-39. A user is limited to leaving a single "like" on a Facebook post. *Id.* According to the '687 patent, that is a problem because a user should have the opportunity to have multiple engagements with any given content on a platform so that they can be "noticed by or otherwise be distinguished from other users." *Id.* at co. 1:39-44.

The '687 patent purports to solve this alleged problem by allowing users to exchange resources to have multiple engagements with a given content. *Id.* at col. 1:50-54, 2:2-11. "So long as the user has sufficient resources, the user may promote herself or others with uncapped (i.e., unlimited) engagement, which may facilitate getting noticed by other users[.]" *Id.* at col. 2:6-9. The ability for each user to leave multiple comments or "likes"—each one considered an engagement—is repeated throughout the '687 patent and included in every claim, including claim 23. "In this manner, a first user who has more engagements than a second user may be differentiated by the system over the second user and may therefore be noticed by other users more so than the second user." *Id.* at col. 5:62-66.

Starting with its title, "SYSTEM AND METHOD OF AGGREGATING NETWORKED SOCIAL CONTENT AND FACILITATING UNCAPPED ENGAGEMENT IN A NETWORKED VIRTUAL ENVIRONMENT," the '687 patent repeatedly stresses that the number of comments left by users must be "uncapped." *Id.* at Title; Abstract (summarizing the patent as relating to "uncapped engagements"; col. 1:20-24 (the field of the invention involves

uncapped engagement); col. 2:6-11 (the summary of the invention involves uncapped engagements); col. 5:16-37 (describing each Figure in the patent as relating "facilitating uncapped engagements"); *et seq.* What this means and what the '687 patent expressly confirms is that "uncapped" are "unlimited" engagements: "Uncapped engagements refer to an ability by a given user to engage with content an unlimited number of times, so long as a requisite number or amount of user resources is exchanged for the engagements." *Id.* at col. 5:66-6:3.

### B.      The Complaint's Direct And Indirect Infringement Claims Against Google

The Complaint includes direct infringement claims against a feature on Google's YouTube platform, Super Chat, as well as indirect infringement claims against Google based on Super Chat. Compl. at ¶¶ 12, 13, 14. Although the Complaint asserts that Google might directly or indirectly infringe any "one or more of claims 1-24 of the '687 patent" under 35 U.S.C. § 271(a) (*id.* at ¶¶ 13, 14), the factual allegations supporting all of its direct and indirect infringement claims are based on claim 23 of the '687 patent (*id.* at Ex. B). All of the other independent claims of the '687 patent, however, have the same elements in claim 23 that are the basis for this motion. *See* '687 patent at col. 16:23-57 (independent claim 1); col. 18:18-38 (independent claim 11); col. 18:39-col. 19:10 (independent claim 12); col. 19:11-50 (independent claim 13); and col. 21:41-col. 22:42 (independent claim 24). Consequently, the arguments in this brief apply to the '687 patent even if EscapeX were to try to assert a different patent claim from the '687 patent. [4]

Claim 23 recites as follows, with numbered brackets added to correlate to the rows in Escape-X's infringement contentions in Exhibit B to the Complaint (Ex. B at 23-1 through 23-10):

> 23. [1] A method for aggregating content and facilitating uncapped engagement of the content, the method being implemented on a computer system comprising one or more physical processors

---

[4] All other claims are dependent claims, and thus include all of the elements of at least one independent claim. 35 U.S.C. § 112(d).

programmed by computer program instructions to perform the method, the method comprising:

[2] obtaining, by the computer system, a networked content item authored by a user;

[3] generating, by the computer system, a user interface comprising the networked content item and a display option configured to receive a request to obtain engagements with respect to the networked content item;

[4] providing, by the computer system, via a network, the user interface;

[5] receiving, by the computer system, via the user interface, an indication to obtain a first plurality of engagements relating to the networked content item from a first user different from the user that authored the networked content item, wherein the indication to obtain the first plurality of engagements comprises an indication to obtain the first plurality of engagements together with at least a third user, different from the user, the first user, and the second user;

[6] determining, by the computer system, an amount of resources required to obtain the first plurality of engagements;

[7] debiting, by the computer system, the amount of resources from a user account balance associated with the first user and/or from another user account balance associated with the third user, wherein the user account balance stores an amount of resources available to the first user;

[8] storing, by the computer system, in a database accessible to the computer system, an association between the first plurality of engagements and the first user;

[9] obtaining, by the computer system, from the database, information indicating a second plurality of engagements with respect to the networked content item from at least a second user different from both the user and the first user; and

[10] providing, by the computer system, via the user interface, an indication of the first plurality of engagements from the first user and the second plurality of engagements from the second user.

'687 patent at col. 20:65 – 21:40.

The support for EscapeX's infringement claims is in the claim chart attached to EscapeX's Complaint as Exhibit B. Compl. at ¶ 12. This Exhibit attempts to match the elements of claim 23 to a YouTube support page (support.google.com/youtube) and screenshots from a recorded video of a livestreaming session from 2018 where Super Chat was allegedly used by four viewers. *See* Compl. Ex. B.[5]

Three panels from Exhibit B that are relevant to the present motion are reproduced below. The first panel purports to demonstrate how Super Chat satisfies claim 23's requirement that engagements be uncapped:



| Row | Claim Element | Contention |
|-----|---------------|------------|
| 23-1 | 23. A method for aggregating content and facilitating uncapped engagement of the content, the method being implemented on a computer system comprising one or more physical processors programmed by computer program instructions to perform the method, the method comprising: | <https://support.google.com/youtube/answer/7288782> (©2023 Google)<br><br>YouTube Super Chat has a method for aggregating content and facilitating uncapped engagement of the content, the method being implemented on a computer system comprising one or more physical processors programmed by computer program instructions to perform the method. |

Ex. B at 23-1.  As shown, however, there is no mention that Super Chat permits "uncapped" engagements in this panel. To the contrary, another section of the support website relied on by

---

[5] As the recorded video dates from ***before*** the issuance of the '687 patent in 2019, this motion defers to EscapeX's pleading and assumes that the 2018 video reflects Super Chat's operation at some time post-issuance—without waiver of Google's rights to object or dispute the video in the future.

EscapeX to support its allegations against claim element 23-1 states the opposite—*viz.*, that Super

Chats are subject to daily and weekly caps:

**Purchase limits**

Purchases less than $5 USD (or your local equivalent) will not show in the ticker.

Depending on your country or region, the daily and weekly purchase limit will vary. In general, you can spend up to $500 USD per day, or $2,000 USD per week (or the equivalent in your local currency) on:

- Super Chats
- Super Stickers
- Super Thanks
- All 3 combined

Barron Decl., Ex. 5.[6]

The panel addressing element "[5]" then purports to demonstrate how the system receives

"an indication" from a "first user" "to obtain a first plurality of engagements":

| 23-5 | receiving, by the computer system, via the user interface, an indication to obtain **a first plurality of engagements relating to the networked content item from a first user** different from the user that authored the networked content item, wherein the indication to obtain the first | YouTube Super Chat shows a first plurality of engagements relating to the networked content item from a first user (i.e., A$200.00).  YouTube Super Chat shows a third user (i.e., CA$13.99). |
| --- | --- | --- |

[6] See https://support.google.com/youtube/answer/9178363?sjid=13692203356771063119-NC#zippy=%2Cbuy-a-super-chat-or-super-sticker (last visited March 8, 2024)



*Id.* at Panel 23-5. As shown, however, this panel identifies only **one** Super Chat associated with the purported "first user" (identified as "*i.e.*, A\$200.00"). It also identifies only **one** Super Chat from second, third and fourth users, and adds a red square around the third user ("CA\$13.99") to identify the required Super Chat from a "third user" that is different from the first user's Super Chat. But EscapeX never identifies a "plurality of engagements"—*i.e.*, more than one Super Chat—from the alleged "first user" (or any other user), despite claim 23's requirement that there be a "first plurality of engagements" from the "first user." *Id.* Nor does this panel illustrate (or plausibly allege) that the system has a "user interface" that "receives" an "indication" of a "plurality of engagements" from anyone. Rather, the charted screen depicts a single Super Chat after it has been received from each user, not an "indication" that any user sought to "obtain" a "plurality."

The panel addressing claim 23's element "[10]" purports to show where Super Chat displays the required "first plurality of engagements" from the "first user"—*i.e.*, "A\$200.00"—and distinguishes them from the required "second plurality of engagements" originating from a different, "second user" (identified in Panel 23-9 as "\$99.99" and surrounded by a red square in the lowest screenshot below):

-9-

| 23-10 | providing, by the computer system, via the user interface, an indication of the **first plurality of engagements from the first user** and the **second plurality of engagements from the second user.** | YouTube Super Chat shows the first plurality of engagements relating to the networked content item from the first user, and the second plurality of engagements relating to the networked content item from the second user. |
|---|---|---|



<https://www.youtube.com/watch?v=bnx7kckso88> (2018-10-27)

*Id.* at Panel 23-10. Once again, however, EscapeX identifies only a ***single*** Super Chat from the first user ("A$200") and only a ***single*** Super Chat from the second user, despite the Complaint's admission that claim 23 requires a "***plurality*** of engagements" from each of the first and second users. *Id.* (emphasis added); *see also* '687 patent at col. 21:37-40.

EscapeX's claim chart is the basis for both of EscapeX's direct and indirect infringement claims, as there can be no indirect infringement without an underlying act of direct infringement. *See, e.g., Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964). And EscapeX is attempting to allege indirect infringement in addition to its direct infringement claim, although the Complaint is confusing and contradictory with regard to what type of indirect infringement is being alleged. The Complaint purports to plead indirect infringement based on both inducement (35 U.S.C. § 271(b)) and contributory infringement (35 U.S.C. § 271(b)) theories (Compl. at ¶¶ 13, 14). EscapeX, however, also drops a footnote stating EscapeX "reserves the right to amend and add inducement pre-suit if discovery reveals an earlier date of knowledge" (*id.*)—suggesting that inducement claims are not actually in the case.

Regardless of what indirect infringement claims EscapeX is trying to plead, however, both induced and contributory infringement require EscapeX to allege facts that, among other things, make it plausible that Google knew of the '687 patent before EscapeX filed this lawsuit. *Global-Tech*, 563 U.S. at 764-65; *Aro*, 377 U.S. at 488, n.8. EscapeX attempts to plead facts to meet this additional element of its indirect infringement claims by alleging that Mr. Cohen learned of the '687 patent when EscapeX purportedly gave him the white paper attached as Exhibit C to the Complaint on March 22, 2016. Compl. at ¶¶ 7, 13, 14; *id.* at n.3, n.4. EscapeX then suggests Mr. Cohen purportedly carried this knowledge on to Google when he joined the company about nine months later, albeit in conclusory fashion. *Id.*

The white paper, however, identifies the '687 patent by its patent number and discusses the alleged invention.  Compl. Ex. C at 13. As the '687 patent's application was not filed until **December 5, 2016** and it did not issue until **November 12, 2019**, however, the white paper cannot

possibly have been given to Mr. Cohen on March 22, 2016. Compl. at ¶ 8 & Ex. A (cover). Indeed, no one would have known the '687 patent's number until October 2019 under the rules in place at the time. *See, e.g.,* Fed.Reg., Vol. 86, No. 238 at 71210 (describing a 2021 proposal to change paper issuance process that was in effect in 2019). The white paper also contains other references that make clear that it could not have existed in 2016, such as a reference to another patent that issued in 2018 (*id.* at 16, referencing U.S. Patent No. 10,140,365[7]), screenshots of social media comments dating through 2019 (*id.* at 46), and the fact that the "Roadmap" for the future begins in 2019 (*id.* at 53-54). Indeed, its introduction begins: "Social media has undergone a rapid revolution in the past decade. ***Today***, users spend time on social platforms to connect with friends and their favorite celebrities—***in 2019***, the average user spends ...." *Id.* at 7 (emphasis added).  All of these facts are readily apparent upon a cursory review of the white paper.

### C.      Google's February 12, 2024 Letter To EscapeX

Google is no stranger to EscapeX or its counsel, the Ramey firm, which is a prolific filer of patent lawsuits around the country. Indeed, Judge Chhabria of the Northern District of California recently granted Google's motion under 35 U.S.C. § 285 in another lawsuit brought by EscapeX and the Ramey firm, declaring the case "exceptional," and ordering EscapeX "to reimburse Google in the amount of $191,302.18," finding that "EscapeX and its parent company DynaIP has a history of bringing frivolous suits." Barron Decl., Ex. 3 at 2 (Order Granting Motion for Attorneys' Fees Under 35 U.S.C. § 285 in *EscapeX IP LLC v. Google LLC*, Case No. 22-cv-08711-VC (Aug. 15, 2023), ECF No. 57). When EscapeX brought a Rule 59(e) motion in the wake of this fee award, Judge Chhabria found it frivolous as well and levied additional "attorneys' fees

---

[7] The Court can take judicial notice of the issue date of U.S. Patent No. 10,140,365, which is a government record publicly available via the USPTO website, *see* https://patentcenter.uspto.gov/ (permitting search by, *inter alia*, patent number) (last visited March 5, 2024).

and costs in the amount of $63,525.30" to be assessed jointly and severally against counsel who had brought the motion, including Mr. Ramey, EscapeX's counsel here, under 28 U.S.C. § 1927. *Id.*, Ex. 4 at 2-3 (Order Granting Motion for Attorneys' Fees Under 28 U.S.C.. § 1927 in *EscapeX IP LLC v. Google LLC*, Case No. 22-cv-08711-VC (Feb. 2, 2024), ECF No. 87).

Hoping to avoid a similar situation in the present case, Google's counsel sent EscapeX and the Ramey firm a detailed letter explaining the defects in EscapeX's claims, which were apparent from the face of EscapeX's Complaint. Barron Decl., Ex. 1. With regard to the "plurality of engagements" element of the claims, Google anticipated that EscapeX might assert that the currency associated with the single Super Chats that it had identified in its pleadings should be (incorrectly) considered to be a "plurality of engagements" because they reflect more than one U.S. or Australian dollar. *Id.* at 4-6. Google explained how the currency amounts could not possibly satisfy the plurality of engagements element of asserted claim 23 or the other claims. *Id.* Google's letter also pointed out numerous other defects in EscapeX's pleading and claims, including the failure to identify a user interface displaying an indication of the receipt of a request to obtain a plurality of Super Chats; that Super Chats were not uncapped; and that the white paper EscapeX attached to its Complaint could not possibly have existed in 2016 (as alleged). *Id.* at 1-3, 6-10.

EscapeX declined to dismiss its Complaint and instead sent a response to Google's letter on March 4, 2024. Barron Decl., Ex. 2. The response indicated that EscapeX was ***not*** relying on the currency amounts to establish the required "plurality of engagements," but failed to address the fact that if it was not relying on the currency amounts, then its pleadings had only identified a single Super Chat from a first user and a single Super Chat from a second user when it needed to

identify a "plurality" from each to allege a plausible infringement claim.  *Id.* at 1.1-1.4.[8]  EscapeX similarly failed to address that, even if the YouTube livestream were alleged to show more than one itself reflected an "indication" of a single Super Chat from a user (which it was not), the Complaint did not allege that YouTube ever provided an "indication" of a desire to "obtain" a "plurality of engagements." *Id.* at 1.4. EscapeX disputed that the daily and weekly caps on the number of Super Chats left by a user indicated that Super Chat was not "uncapped"; it argued that the "uncapped engagements" element are not actually caps because they renew on a 24 hour and weekly basis. *Id.* at 1.5-1.8. EscapeX did not address Google's other points, including that the white paper that it had attached to its Complaint could not possibly have existed in 2016, despite EscapeX's allegation to the contrary.

### III.   LEGAL STANDARDS

The pleading standards set forth in *Iqbal* and *Twombly* apply to EscapeX's patent infringement claims. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352-53 (Fed. Cir. 2021). To satisfy the *Iqbal/Twombly* standard, a complaint must include enough factual content to "nudg[e]" the claim "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 688 (2009) (quoting *Twombly*, 550 U.S. at 570). A plaintiff "is not required to plead infringement on an element-by-element basis," but it "cannot assert a plausible claim for infringement under the Iqbal/Twombly standard by reciting the claim elements and merely concluding that the accused product has these elements." *Bot M8*, 4 F.4th at 1352-53 (internal citations and quotations omitted).

---

[8] That Google had difficulty understanding what EscapeX was even alleging constituted the purported infringement in its Complaint is further evidence that the Complaint fails the notice standard of Rule 8 and *Iqbal/Twombly*, discussed *infra*.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Conclusory assertions and statements should be disregarded. *Id.* Moreover, "[w]hen the complaint relies upon a document ... such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). A Court may also consider matters of which a court can take judicial notice or documents that Plaintiff knew about and relied upon. *D & A Family Deli Inc. v. United States*, No. 23-cv-2231 (AT), 2024 WL 81571, at *2 (Jan. 8, 2024) (*citing Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). But "[t]he court need not accept as true an allegation that is contradicted by documents on which the complaint relies." *In re Bristol–Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004).

A plaintiff may also plead itself out of Court by making allegations that establish that it does not satisfy the elements of its claim or which admit a dispositive affirmative defense. *D&A Family Deli*, 2024 WL 81571, at *2. Indeed, "[a] party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *In re Initial Public Offering Securities Litigation*, 241 F.Supp.2d 281, 324 (S.D.N.Y. 2003) (citing *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir.1985). "Plaintiffs may even plead themselves out of court at the outset of their lawsuit by pleading information that defeats their legal claim[.]" *Id.* (citation omitted); *see also NXIVM Corp. v. Foley*, No. 1:14-cv-1375 (LEK/RFT), 2015 WL 12748008 (S.D.N.Y. Sep. 17, 2015) (granting motion to dismiss based on the statute of limitations where plaintiffs' complaint established all of the elements of the defense). And "a court need not feel constrained to accept as truth conflicting pleadings . . . that are contradicted either by statements in the Complaint itself or by documents upon which its pleadings

rely, or by facts of which the court may take judicial notice." *In re Livent, Inc. Noteholders Sec. Litig.,* 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001) (citations omitted).

## IV.   ARGUMENT

EscapeX's Complaint does not state a plausible claim for either direct or indirect infringement of the '687 patent. Indeed, EscapeX both ignores requirements of the '687 patent's claims and pleads allegations that contradict the requirements of the '687 patent's claims. EscapeX's allegations that it delivered a 2019 white paper to Mr. Cohn in 2016—when that is clearly impossible—further demonstrate that EscapeX's claims have no merit and that EscapeX and its counsel failed to conduct a reasonable pre-suit investigation.

### A.   <u>EscapeX Has Failed To Allege A Plausible Direct Infringement Claim</u>

Liability for direct infringement arises when a party, "without authority, makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." 35 U.S.C. § 271(a). To constitute direct infringement, "the accused device must include all of the limitations contained within the patent claim." *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 (Fed. Cir. 2000).  "Although a plaintiff 'need not prove its case at the pleading stage' and must provide only notice of what activity is being accused of infringement, …., at a bare minimum, to survive a motion to dismiss, a complaint alleging patent infringement must (1) attach the asserted patents to the complaint, (2) specifically identify the accused products and attach photographs of them to the complaint, and (3) allege that that the accused products meet each and every element of at least one claim of the asserted patents." *Invincible IP LLC v. SAS Institute Inc.*, 22-cv-4490 (AKH), 2022 WL 3668322, at *1 (S.D.N.Y. Aug. 25, 2022). EscapeX fails to meet these pleading requirements in at least three ways.

    **1.**    **EscapeX Has Failed To Plead That Super Chat Has The Required "First Plurality Of Engagements" From A First User Or A "Second Plurality Of Engagements" From A "Second User"**

As noted, Claim 23 and the other claims of the '687 patent require a "first plurality of engagements" from a "first user" and a "second plurality of engagements" from a "second user." '687 patent at col. 21:11-19, col. 21:32-36 & col. 21:37-40. EscapeX admits in the claim chart that it uses to support its infringement claims that the '687 patent includes both requirements. Compl. Ex. B at 23-5, 23-9 & 23-10. EscapeX, however, fails to identify any "plurality of engagements" from any user. It instead identifies only a single Super Chat from the alleged first user and a single Super Chat from the alleged second user.

EscapeX has thus failed to allege that Super Chat "meet[s] each and every element of at least one claim of the asserted patents." *Invincible IP,* 2022 WL 3668322, at *1 (granting motion to dismiss).  Moreover, although claim 23 is the only support for the infringement allegations in its Complaint, it would not matter if EscapeX tried to substitute a different claim in its pleadings: all independent claims of the '687 patent (and thus all of its 24 claims) require a "plurality of engagements" from each of a "first" and "second" user. *See* '687 patent at col. 16:23-57 (independent claim 1); col. 18:18-38 (independent claim 11); col. 18:39-col. 19:10 (independent claim 12); col. 19:11-50 (independent claim 13); and col. 21:41-col. 22:42 (independent claim 24). The Complaint should therefore be dismissed.

    **2.**    **EscapeX Has Failed To Plead The Required Indication Of A Plurality Of Engagements**

Similarly, EscapeX's Complaint fails to allege facts demonstrating that it is plausible that a "user interface" associated with Super Chat receives an "indication" to "obtain a plurality of engagements." EscapeX points to a screenshot with a link to a YouTube video displaying only one engagement from each user. Barron Decl., Ex. 2 at 1.4; *see also* Compl. Ex. B at 23-5. But that

puts the cart before the horse, as the system must "obtain" the "plurality of engagements" via its "user interface" before they can be displayed. EscapeX never identifies where the system has the required user interface for ***obtaining*** any engagement, much less that there is a "user interface" that provides an "indication to obtain" a "plurality of engagements," as required by claim 23. Again, all claims of the '687 patent include this requirement. *See* '687 patent at col. 16:23-57 (independent claim 1); col. 18:18-38 (independent claim 11); col. 18:39-col. 19:10 (independent claim 12); col. 19:11-50 (independent claim 13); and col. 21:41-col. 22:42 (independent claim 24). For this reason as well, the Complaint should be dismissed.

### 3. EscapeX Has Failed To Plead That Super Chats Are Uncapped

EscapeX's Complaint should also be dismissed because it has failed to plead that it is plausible that Super Chats are "uncapped." Claim 23 requires "uncapped engagements," as admitted in the claim chart attached to EscapeX's Complaint and acknowledged in EscapeX's March 4, 2024 response to Google's counsel. *See* Compl. Ex. B at 23-1 & Barron Decl., Ex. 2. EscapeX's infringement contentions nowhere assert that Super Chats are uncapped. *See* Compl. Ex. B at 23-1. Indeed, they are not "uncapped." Every Super Chat user in the United States is limited to purchasing no more than $500 worth of Super Chats per 24 hour period and no more than $2000 worth of Super Chats in any given seven-day period. Barron Decl., Ex. 5.[9] Once again, this is an element of every claim of the '687 patent. *See* '687 patent at col. 16:23-57 (independent claim 1); col. 18:18-38 (independent claim 11); col. 18:39-col. 19:10 (independent claim 12); col. 19:11-50 (independent claim 13); and col. 21:41-col. 22:42 (independent claim 24).

---

[9] This Exhibit is taken from the same support website that is cited and relied upon by EscapeX for its infringement contentions. *See, e.g.,* Compl. Ex. B at 23-1; *compare* https://support.google.com/youtube/answer/9178363?hl=en&co=GENIE.Platform%3DAndroid#zippy=%2Cbuy-a-super-chat-or-super-sticker (last visited March 8, 2024). The Court may therefore consider it in deciding Google's motion to dismiss. *See D&A Family Deli*, 2024 WL 81571, at *2; *Kemp*, 2019 WL 111045, at *4 n.3 (E.D.N.Y. Jan. 4, 2019)..

Thus, EscapeX has not, and cannot, plausibly allege that Super Chats are "uncapped." Super Chats are always subject to daily and weekly caps, as reflected in the very Google support website cited by EscapeX in its Complaint. The infringement claim alleged in the Complaint should be dismissed.  EscapeX's assertion in its March 4, 2024 letter that it will be able to amend its Complaint to fix this failing in its pleading is also without basis. EscapeX has ***not*** sought to amend, and its new, ***un***-alleged theory of infringement is without merit. Once presented with this webpage, EscapeX claimed that the daily and weekly caps on Super Chats should not count as caps because they renew on a daily and weekly basis. Barron Decl., Ex. 2. That the caps renew, however, does not change the fact that they are caps. A user in the U.S. who spends $500 cannot buy any more Super Chats on ***any*** livestreams for 24 hours; their purported "engagements" are capped. Nor has EscapeX plausibly alleged facts anywhere in its pleadings supporting the novel (and incorrect) theory espoused in its March 4th letter; it does not address the "uncapped" element in the '687 patent's claims at all. On this further ground, EscapeX's Complaint should be dismissed.

### B.   EscapeX's Indirect Infringement Claims Should Also Be Dismissed For Lack Of A Viable Direct Infringement Claim And Because They Are Contradicted By Their Supporting Exhibit

The Court also should dismiss all of EscapeX's indirect infringement claims for lack of a properly pleaded underlying act of direct infringement as shown above. *Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 572 U.S. 915, 920-21 (2014) (underlying act of direct infringement required for induced infringement); *Aro*, 365 U.S. at 341 (underlying act of direct infringement required for contributory infringement). Additionally, the Court should dismiss the Complaint's indirect infringement claims (under whatever theory EscapeX is trying to espouse[10]) for the

---

[10] As noted above, Paragraph 13 of the Complaint purports to plead an inducement theory but footnote 7 states that no inducement theory has been pleaded. *Compare* Compl. at ¶ 13 *with* n.7.

additional reason that EscapeX has failed to plead a plausible allegation that Google knew of the '687 patent prior to this lawsuit. *Global-Tech*, 563 U.S. at 764-65 (knowledge of the patent and the alleged infringement required for induced infringement); *Aro*, 377 U.S. at 488 n.8 (knowledge of the patent and the alleged infringement required for contributory infringement). The basis for Google's alleged knowledge—the white paper the Complaint asserts was given to Lyor Cohen in March 2016—could not possibly have existed in March 2016, and the Complaint's allegation to the contrary should be disregarded.

In this Circuit, a "court must generally accept as true all of the factual assertions in the complaint. However, there is a narrow exception to this rule for factual assertions that are contradicted ... by documents upon which the pleadings rely[.]" *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011) (summary order) (citation omitted); *Sobek v. Quattrochi*, No. 03-CV-10219, 2004 WL 2809989, at *2 (S.D.N.Y. Dec. 8, 2004) ("While the Court must accept the allegations in the complaint as true, to the extent any allegations directly contradict evidence contained in the documents relied upon by a plaintiff, the documents control, and the allegations need not be accepted as true."); *In re MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566, 576 (S.D.N.Y. 2010) (court need not accept as true allegations contradicted by document that is part of complaint).

Here, the white paper attached as Exhibit C to EscapeX's Complaint is the only factual support for EscapeX's allegation that anyone at Google knew of the '687 patent prior to EscapeX's filing of its Complaint. *See* Compl. at ¶¶ 76, 13, 14. As discussed above, however, the white paper could not have existed at the time of the alleged March 2016 meeting between EscapeX and Mr. Cohen. Moreover, even if the meeting is assumed to have occurred and the Court further assumes *something* was given to Mr. Cohen in March 2016, whatever that unpleaded document was could not have provided any notice of the '687 patent because the application for the '687 patent was not

even *filed* until December 5, 2016—about nine months later—and the '687 patent did not issue until November 12, 2019. '687 patent (cover); *accord* Compl. at 8. It is thus impossible for Mr. Cohen, Google, or anyone else to have any knowledge of the '687 patent stemming from any alleged March 2016 meeting. EscapeX's indirect infringement claims should be dismissed on this independent ground as well.

## V. CONCLUSION

EscapeX has failed to allege a plausible infringement claim and the allegations that it has made in its Complaint and their attachments confirm it has no plausible infringement claim. The Court should dismiss EscapeX's Complaint.

Dated:  March 11, 2024                              Respectfully submitted,


                                                   */s/ Jeff M. Barron*
                                                   Jeff M. Barron
                                                   One of Google LLC's Counsel

                                                   Lawrence Gerschwer (Bar No. 2658904)
                                                   Lawrence.Gerschwer@btlaw.com
                                                   Nadine S. Kohane (Bar No. 5125208)
                                                   Nadine.Kohane@btlaw.com
                                                   **BARNES & THORNBURG LLP**
                                                   390 Madison Avenue
                                                   12th Floor
                                                   New York, NY 10017-2509
                                                   Tel: (646) 746-2000
                                                   Fax: (646) 746-2001

                                                   Jeff M. Barron
                                                   (Admitted *pro hac vice*)
                                                   Jeff.Barron@btlaw.com
                                                   Bradley R. Love
                                                   (*Pro hac vice* forthcoming)
                                                   Bradley.Love@btlaw.com
                                                   **BARNES & THORNBURG LLP**
                                                   11 South Meridian Street
                                                   Indianapolis, IN 46220

Tel: (317) 231-1313
Fax: (317) 236-7433

Juanita DeLoach
(*Pro hac vice* application forthcoming)
JuanitaDeLoach@btlaw.com
**BARNES & THORNBURG LLP**
2121 North Pearl Street, Ste. 700
Dallas, TX 75201
Tel: (214) 258-4200
Fax: (214) 258-4199

**ATTORNEYS FOR DEFENDANT GOOGLE
LLC**

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2024, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

_/s/ Jeff M. Barron_