**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

ESCAPEX IP, LLC,

                                 Plaintiff,

               -against-

GOOGLE LLC,

                              Defendant.

-----------------------------------------------------------------X

**23-CV-10839 (VSB) (VF)**

<u>**OPINION & ORDER**</u>

**VALERIE FIGUEREDO, United States Magistrate Judge.**

        Defendant Google LLC ("Defendant") has moved for sanctions in the form of an award of attorney's fees and costs against Plaintiff EscapeX IP, LLC ("Plaintiff") and its counsel, William P. Ramey III, David Hoffman, and Ramey IP LLC (collectively, the "Ramey firm"), under 28 U.S.C. § 1927 and the court's inherent power. For the reasons explained below, Defendant's motion is **GRANTED** in part and **DENIED** in part.

<u>**BACKGROUND**</u>

A.  <u>The Present Case</u>

        Plaintiff, represented by the Ramey firm, commenced this action on December 13, 2023, asserting one count of patent infringement against Defendant. ECF No. 1 at ¶¶ 8-15. Plaintiff alleges that Defendant infringed on U.S. Patent No. 10,474,687 (the "'687 patent") entitled "System and Method of Aggregating Networked Social Content and Facilitating Uncapped Engagement in a Networked Virtual Environment," which was issued and assigned to Plaintiff by the U.S. Patent and Trademark Office on November 12, 2019. ECF No. 1 at ¶ 8; ECF No. 1-1.[1] The '687 patent abstract describes the patent as:

---

[1] The page numbers referenced herein for citations to the electronic docket ("ECF") are to the ECF-generated pagination in the document.

> A system and method is disclosed for aggregating networked content, and allowing user to obtain an *unlimited* number of engagements relating to networked content. The system may publish a ranking of users based on the number of engagements obtained by the users. Such ranking may facilitate highlighting or otherwise setting apart those users who have obtained more engagements relating to content, thereby allowing a user or user's content to be noticed by others, even among a vast number of networked content that is available.

ECF No. 1-1 at 2 (emphasis added).

The '687 patent has 24 claims, and although Plaintiff asserts that Defendant may directly or indirectly infringe on any of the 24 claims, Plaintiff specifically relies on Claim 23 of the patent to provide the factual allegations that support its infringement claim. ECF No. 1 at ¶¶ 12-14; ECF No. 1-2 at 2-6 (identifying the elements of Claim 23 of Plaintiff's patent). Plaintiff alleges that Defendant "offers for sale, sells, and manufactures one or more firewall systems that infringe one or more claims of the '687 patent[]" and specifically names YouTube's "Super Chat" as the infringing application.[2] ECF No. 1 at ¶¶ 10-11.

Super Chat allows "viewers of a YouTube livestream [to] pay a fee to pin a comment made during a livestreamed performance so that the comment does not scroll down and off the screen when other viewers leave other comments." ECF No. 20 at 5. Claim 23 of the '687 patent requires that users pay "resources" in exchange for the opportunity to leave an "uncapped . . . plurality of engagements" on a given piece of "content." ECF No. 20 at 5-6; see also ECF No. 1-2 at Row 23-1, Row 23-5, Row 23-10. Claim 23 also requires that "users receive, 'via user interface,' an 'indication' of their desire to 'obtain a plurality of engagements.'" ECF No. 20 at 5-6; ECF No. 1-2 at Row 23-5. The complaint alleges that the Super Chat feature associated with Defendant's YouTube platform has "uncapped" engagements

---

[2] YouTube is a subsidiary of Defendant. See ECF No. 20 at 9.

that directly, or under the doctrine of equivalents, infringe on the '687 patent. ECF No. 1 at ¶¶ 13-14; see also ECF No. 25 at 14-15.

Defendant asserts that Super Chat does not infringe on Claim 23 because Plaintiff "fails to allege that (1) users leave 'a plurality of engagements' during the same livestream; (2) that any 'user interface' displays an 'indication' of a user's desire to leave more than one Super Chat, *e.g.*, to 'obtain a plurality of engagements'; or (3) that a Super Chat user's engagements are 'uncapped.'" ECF No. 20 at 6. Specifically, Defendant points out that Super Chat engagements are capped because users are "limited to purchasing no more than $500 [USD] worth of Super Chats per 24 hour period and no more than $2000 worth of Super Chats in any given seven-day period." ECF No. 20 at 22; see also ECF No. 26-5 at 8, 13-14.

Plaintiff also alleges that Defendant knew of the technology that would later underly the '687 patent since 2016. ECF No. 1 at ¶ 7. According to the complaint,

> On March 22, 2016 Escapex met with Lyor Cohen to demonstrate Escapex' patented "Super Star" system and method. At the time, Escapex additionally presented the "Escapex White Paper." The Escapex White Paper provided details as to how Escapex' SuperStar system operates including benefits gained by using the system and how to implement the SuperStar system. The Escapex White Paper provided detailed descriptions of Escapex' patent portfolio as well as descriptions of each patent including how the SuperStar system utilized each patent. Mr. Cohen received the Escapex White paper while with 300 Entertainment. Six months later, in September 2016, it was announced that Mr. Cohen would become the head of Youtube Music. On January 12, 2017 shortly after Mr. Cohen arrived at Youtube, Youtube introduced "Super Chat" incorporating the patented features of Escapex' Super Star system.

Id. Plaintiff annexed the white paper to the complaint at Exhibit C. ECF No. 1-3.

According to Defendant, because the application for the '687 patent was not filed until eight months after this alleged meeting with Cohen, the white paper attached to the complaint that references the '687 patent by its patent number could not have been disclosed at the meeting in March 2016. ECF No. 25 at 19-20. The '687 patent was not issued until November 12, 2019.

3

ECF No. 1 at ¶ 8. Additionally, the white paper annexed to the complaint references another patent that issued in 2018 (see ECF No. 1-3 at 17, referencing U.S. Patent No. 10,140,365)[3], as well as social media comments from 2019 (see ECF No. 1-3 at 47) and a "Roadmap" that begins in 2019. ECF No. 1-3 at 54-55.

On February 12, 2024, Defendant's counsel sent a letter to Plaintiff's counsel detailing certain alleged defects in Plaintiff's patent-infringement claim and asking that Plaintiff dismiss its claim. ECF No. 26-5 at 2-11. Specifically, Defendant stated, among other arguments, that (1) the claims of the '687 patent require that "engagement" with social media content be "uncapped" but there is a cap on the engagements in Super Chat, (2) the suit should have been brought in the Northern District of California—where a patent-infringement suit by Plaintiff against Defendant was then-pending—rather than the Southern District of New York, and (3) the complaint relied on a false allegation, because the white paper annexed to the complaint could not have been presented to Mr. Cohen at a March 2016 meeting. Id. at 2-3, 9; ECF No. 20 at 7. Plaintiff responded to Defendant's letter on March 4, 2024, disagreeing with the arguments raised by Defendant. ECF No. 30-5 at 1-2; see also ECF No. 26-29 at 10-13.

On March 11, 2024—the deadline for Defendant to answer the complaint (see ECF No. 14)—Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 19. In its motion, Defendant argued that Plaintiff had not plausibly stated a claim for direct or indirect infringement of the '687 patent because Plaintiff failed to plead that Super Chat engagements are "uncapped." ECF No. 20 at 20, 22. Further, Defendant argued that Plaintiff's false allegation that it delivered a white paper to Mr. Cohen in 2016, mentioning the '687 patent

---

[3] Sephi Joseph Shapira Inventions, Patents and Patent Applications, JUSTIA, https://patents.justia.com/inventor/sephi-joseph-shapira (last visited Mar. 15, 2025).

despite the patent not yet having issued also demonstrates that Plaintiff's claims "have no merit" and Plaintiff and its counsel "failed to conduct a reasonable pre-suit investigation." Id. at 20.

Two hours after Defendant filed its motion to dismiss, Plaintiff voluntarily dismissed the case without prejudice. ECF No. 22. On March 25, 2024, Defendant filed the instant motion, seeking attorney's fees and costs against Plaintiff's counsel, the Ramey firm, and Plaintiff pursuant to 28 U.S.C. §1927[4] and the court's inherent power. ECF No. 24. Plaintiff filed a response on April 4, 2024, opposing the motion, and Defendant filed its reply brief on May 6, 2024. ECF No. 30; ECF No 32. The Court held oral argument on the motion on March 11, 2025. ECF No. 48 ("Tr.").

B.    The EscapeX Suit in the Northern District of California

Prior to this case, on April 28, 2022, Plaintiff commenced a patent-infringement case against Defendant in the Western District of Texas, based on a different patent than the one at issue in this case, U.S. Patent No. 9,009,113 (the "'113 patent"). ECF No. 25 at 11. Defendant moved to transfer the case to the Northern District of California, and the case was transferred to the Northern District of California on December 12, 2023. Id. Defendant contends that it repeatedly notified Plaintiff that the '113 patent was invalid and that its infringement claims had no basis. Id. at 11-12

In the Northern District of California, Plaintiff was represented by the same firm as here, the Ramey firm. Id. at 11. While the case was ongoing in the Northern District of California, Plaintiff filed another infringement suit, based on the same '113 patent, in this District against

---

[4] Both Plaintiff and Defendant incorrectly refer to 28 U.S.C. § 1927 as 19 U.S.C. § 1927. See ECF No. 25; ECF No. 30; ECF No. 32. No such statute exists, and it is evident that the parties are referring to 28 U.S.C. § 1927.

Block, Inc. (not Google). See EscapeX IP LLC v. Block, Inc., 652 F. Supp. 3d 396 (S.D.N.Y.

2023). Plaintiff was also represented by the Ramey firm in that case. See EscapeX IP LLC v.

Block, Inc., No. 22-CV-03575 (JMF), Dkt. 1 (S.D.N.Y. May 3, 2022). On January 24, 2023, the

court in Block, Inc. granted the defendant's motion to dismiss, ruling that the '113 patent was

invalid for failing to claim patentable subject matter. Block, Inc., 652 F. Supp. 3d at 405-08; see

also ECF No. 25 at 11.

        Following the court's ruling in Block, Inc., Plaintiff and Plaintiff's counsel purported to

file a joint stipulation of dismissal on Defendant's behalf in the case pending in the Northern

District of California. ECF No. 25 at 12. The stipulation included a signature attestation stating,

"I, Susan Kalra, attest that concurrence in the filing of this document has been obtained from

Defendants' counsel." ECF No. 26-26 at 15. The stipulation, which included an electronic

signature for Mr. Ramey on behalf of Plaintiff, also included an electronic signature for an

attorney representing Defendant. Id. However, Plaintiff's counsel had not obtained consent from

Defendant's counsel to file the stipulation; the use of Defendant's counsel's signature was

unauthorized; and Defendant's counsel had not agreed to waive Defendant's right to seek

attorney's fees, notwithstanding the representation to the contrary in the stipulation. Id. at 15-16;

see also ECF No. 25 at 12. The stipulation thus falsely represented that "each side would bear

their own costs and attorneys' fees." ECF No. 25 at 12. Defendant demanded that Plaintiff

withdraw the unauthorized filing and the parties ultimately filed a joint stipulation of dismissal

with prejudice. Id. The stipulation preserved Defendant's right to seek attorney's fees against

Plaintiff. Id.; ECF No. 26-26 at 16.

On March 21, 2023, Defendant moved for an award of attorneys' fees under 35 U.S.C. § 285 in the Northern District of California.[5] ECF No. 25 at 12. The court granted the motion, concluding that "EscapeX conducted no serious pre-suit investigation and that th[e] case was frivolous from the start." <u>EscapeX IP LLC v. Google LLC</u>, No. 22-CV-08711 (VC), 2023 WL 5257691, at *1 (N.D. Cal. Aug. 16, 2023). As the court noted, "Google placed EscapeX on notice of the baselessness of its claim early and often" and yet "EscapeX pressed on." <u>Id.</u> Additionally, when EscapeX finally dismissed the complaint, "it was by way of a 'stipulated' dismissal" that Google had never agreed to. <u>Id.</u> The court added that the "attorneys for EscapeX [were] lucky that Google did not separately ask the Court to impose sanctions on them." <u>Id.</u>

Subsequently, Plaintiff filed a motion under Federal Rule of Civil Procedure 59(e), seeking to reverse the court's fee order under § 285, based on newly discovered evidence. ECF No. 25 at 13. In response, Defendant filed a motion for attorney's fees under 28 U.S.C. § 1927. <u>Id.</u> The court granted Defendant's Section 1927 motion, concluding that "the attorneys for EscapeX acted recklessly by filing a frivolous Rule 59(e) motion that unreasonably multiplied the proceedings of this case." <u>EscapeX IP LLC v. Google, LLC</u>, No. 22-CV-08711 (VC), 2024 WL 557729, at *1 (N.D. Cal. Feb. 12, 2024). The court noted that "EscapeX's attorneys' refusal to withdraw or amend their motion when informed by Google's counsel of its numerous problems" was "at a minimum" recklessness. <u>Id.</u> EscapeX appealed the court's order under Section 1927 and the order under 35 U.S.C. § 285, and the appeal remains pending. ECF No. 25 at 13.

---

[5] Under Section 285, the court "may award reasonable attorney fees to the prevailing party" in exceptional cases. 35 U.S.C. § 285; <u>Octane Fitness, LLC v. ICON Health & Fitness, Inc.</u>, 572 U.S. 545 (2014) ("The Patent Act's fee-shifting provision authorizes district courts to award attorney's fees to prevailing parties in exceptional cases.") (internal quotation marks omitted).

## LEGAL STANDARDS

A. 28 U.S.C. § 1927

Sanctions under § 1927 are imposed only "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." Johnson v. Univ. of Rochester Med. Ctr., 642 F.3d 121, 125 (2d Cir. 2011) (citation omitted). To impose monetary sanctions under § 1927, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." Huebner v. Midland Credit Mgmt., Inc., 897 F.3d 42, 55 (2d Cir. 2018) (citation omitted); see also Oliveri v. Thompson, 803 F.2d 1265, 1272-73 (2d Cir. 1986); Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 79 (2d Cir. 2000) ("Bad faith is the touchstone of an award" under § 1927); cf. Zurich Am. Ins. Co. v. Team Tankers A.S., 811 F.3d 584, 591 (2d Cir. 2016) (explaining that a finding of bad faith was not warranted because appellant "tie[d] its reasoning . . . to recognizable legal concepts").

When assessing an attorney's conduct, "[t]he question is whether a reasonable attorney could have concluded that facts supporting the claim might be established, not whether such facts actually had been established." Republic of Rwanda v. Ferone, No. 07-CV-7663 (JSR), 2008 WL 919639, at *1 (S.D.N.Y. Apr. 1, 2008); see also Forman v. Mt. Sinai Med. Ctr., 128 F.R.D. 591, 600 (S.D.N.Y. 1989) (explaining that bad faith may be inferred when "an attorney engages in conduct that is so objectively unreasonable that he necessarily must have been acting in bad faith"). "[A] claim is entirely without color when it lacks *any* legal or factual basis." Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 337 (2d Cir. 1999) (emphasis in original) (internal quotation marks omitted). Conversely, a claim is colorable if it has some

8

factual and legal support when "considered in light of the reasonable beliefs of the individual making the claim." Jiangsu Huari Webbing Leather Co. v. Joes Identified in Schedule A, No. 23-CV-2605 (JLR), 2024 WL 20931, at *5-6 (S.D.N.Y. Jan. 2, 2024) (internal citations omitted). When an attorney "continue[s] to defend" a complaint even after learning of facts rendering the complaint "fatal[ly] flaw[ed]," he has engaged in bad faith conduct sanctionable under § 1927. Liebowitz v. Bandshell Artist Mgmt., 6 F.4th 267, 282-83 (2d Cir. 2021). "[B]ad faith motivation also may be inferred from false allegations in the complaint." Baker v. Urb. Outfitters, Inc., 431 F. Supp. 2d 351, 358 (S.D.N.Y. 2006), aff'd, 249 F. App'x 845 (2d Cir. 2007).

"[A]wards pursuant to § 1927 may be imposed only against the offending attorney; clients may not be saddled with such awards." United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO, 948 F.2d 1338, 1345 (2d Cir. 1991). An award of sanctions under § 1927 requires "clear evidence" of bad faith and a "high degree of specificity in the factual findings" of the court. Oliveri, 803 F.2d at 1272. Prior to imposing sanctions under § 1927, a court must provide the attorney with notice and an opportunity to be heard. Johnson, 642 F.3d at 126. That requirement has been satisfied here: Plaintiff's counsel received notice of the motion and opposed it, both in a brief and at oral argument.

B.  The Court's Inherent Power to Impose a Sanction

A court may impose sanctions against a party and its attorney under its inherent power. See Oliveri, 803 F.2d at 1272. The standard for determining whether sanctions are appropriate pursuant to the court's inherent power is the same as for assessing whether sanctions are appropriate against an attorney pursuant to § 1927. See United States v. Prevezon Holdings, Ltd., 305 F. Supp. 3d 468, 478 (S.D.N.Y. 2018). Specifically, there must be clear evidence that "(1)

the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, motivated by improper purposes such as harassment or delay." Id. at 479 (quoting Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000)); see also International Broth. of Teamsters, 948 F.2d at 1345 (noting that "[s]anctions imposed under a court's inherent power . . . depend not on which party wins the lawsuit, but on how the parties conduct[ed] themselves during the litigation") (internal quotation marks omitted). The only "meaningful difference" between an award under § 1927 and the court's inherent power is that "awards under [Section] 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." Oliveri, 803 F.2d at 1273.

## DISCUSSION

### A.  An Award against Plaintiff's Counsel under 28 U.S.C. § 1927 is Warranted

Plaintiff commenced this suit on December 13, 2023. ECF No. 1. On February 12, 2024, Defendant laid bare for Plaintiff the various deficiencies in its patent-infringement claim, including that the complaint contained false allegations about Defendant's knowledge of the allegedly infringed patent. See ECF No. 26-5. In the face of this, Plaintiff's counsel did not act to either amend or dismiss the complaint, forcing Defendant to file a motion to dismiss. Because counsel commenced a baseless suit for which he did not conduct an adequate pre-suit investigation and then unnecessarily multiplied the proceedings, sanctions under § 1927 are warranted.

To assert a viable patent-infringement claim, a complaint must "(1) attach the asserted patents to the complaint, (2) specifically identify the accused products and attach photographs of them to the complaint, and (3) allege that that the accused products meet each and every element

of at least one claim of the asserted patents." <u>Invincible IP LLC v. SAS Inst. Inc.</u>, No. 22-CV-4490 (AKH), 2022 WL 3668322, at *1 (S.D.N.Y. Aug. 25, 2022). Plaintiff's complaint nowhere plausibly alleges that Defendant's Super Chat meets each and every element of at least one claim of the '687 patent. The complaint specifically points to Claim 23 of Plaintiff's patent. <u>See</u> ECF No. 1-2. Claim 23 of the '687 patent requires "[a] method for aggregating content and facilitating *uncapped* engagements of the content[.]" ECF No. 1-2 at 23-1 (emphasis added). The patent is titled "System and Method of Aggregating Networked Social Content and Facilitating *Uncapped* Engagement in a Networked Virtual Environment," and its abstract describes allowing users to obtain "an *unlimited* number of engagements relating to networked content." ECF No. 1-1 at 2 (emphasis added). The "summary of the invention" in the '687 patent defines the word uncapped as "i.e., unlimited." <u>Id.</u> at 9. The concept of "uncapped" or unlimited engagements is central to the claimed invention, appearing throughout the patent claims, including in Claim 23. <u>See</u> ECF No. 1-1 at 2, 9-13; ECF No. 1-3 at 14. As the patent explains, the patented technology "provide[s] engagements in exchange for user resources," such as "virtual currency," "commodity money," or "digital currency," and "[s]o long as the user has sufficient resources, the user may promote herself or others with uncapped (i.e., unlimited) engagements." ECF No. 1-1 at 9.

Plaintiff's sixteen-paragraph complaint fails to allege that Super Chat facilitates an unlimited number of engagements with network content, as required to plausibly allege an infringement of Claim 23 of the '687 patent. There is a single allegation in the complaint that concerns how the '687 patent is allegedly infringed and that paragraph states in conclusory fashion that Defendant manufacturers and sells "one or more firewall systems that infringes one or more claims of the '687 patent." ECF No. 1 at ¶ 10. The only reference to "uncapped" or

unlimited engagements in the complaint appears in a conclusory allegation where Plaintiff merely quotes from its own patent and vaguely asserts that "Defendant has actively encouraged or instructed others . . . and continues to do so, on how to use its products and services (e.g., aggregating content and facilitating uncapped engagement of the content)." Id. at ¶ 13. The complaint thus fails to provide any factual support for the conclusory allegation that Super Chat infringes every element of Claim 23 of the '687 patent.[6] See AK Meeting IP, LLC, 2024 WL 4299686, at *5 ("[M]ere recitation of claim elements and corresponding conclusions, without supporting factual allegations, is insufficient to satisfy the Iqbal/Twombly standard.") (internal quotation marks omitted); see also House v. Gen. Elec. Co., No. 23-CV-00071 (LDH) (LB), 2024 WL 4350665, at *4 (E.D.N.Y. Sept. 30, 2024) (granting defendant's motion to dismiss because plaintiff's charts "simply recite each step laid out" in the patent and "highlight[s]" elements of the alleged infringing products without any further allegations regarding how those elements are similar or infringing); mCom IP, LLC v. HSBC Bank USA, N.A., No. 23-CV-8801 (DLC), 2024 WL 1704506, at *5 (S.D.N.Y. Apr. 19, 2024) (concluding that plaintiff "failed to state a claim for direct infringement" because it had not "plausibly alleged that [defendant's] product practices all limitations of any claim of the patent in suit").

---

[6] Contrary to counsel's contention at oral argument (Tr. at 35:18-19), the complaint must plausibly state a claim of infringement and that failure cannot be remedied through discovery. See AK Meeting IP, LLC v. Epic Games, Inc., No. 23-CV-8214 (GHW), 2024 WL 4299686, at *5 (S.D.N.Y. Sept. 26, 2024) (quoting Bot M8 LLC v. Sony Corp. of Am., 4 F.4th 1342, 1352-53 (Fed. Cir. 2021)) ("While a plaintiff is 'not required to plead infringement on an element-by-element basis,' it must nonetheless provide 'factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim.'"); see also Bos. Sci. Corp. v. Nevro Corp., 415 F. Supp. 3d 482, 489 (D. Del. 2019) ("To plead direct infringement, a plaintiff must allege facts that plausibly indicate that the accused products contain each of the limitations found in the claim.") (internal quotation marks omitted).

For further support, the complaint refers to Exhibit B, which is a chart that appears to compare the elements of Claim 23 of Plaintiff's patent to elements of Defendant's Super Chat. Id. at ¶ 12; see also ECF No. 1-2. For the first element of Claim Element 23 in Exhibit B, Plaintiff includes the Super Chat logo with a link to Defendant's website. ECF No. 1-2 at Row 23-1. Below the logo and link appears the following text: "YouTube Super Chat has a method for aggregating content and facilitating uncapped engagement of the content, the method being implemented on a computer system comprising one or more physical processors programmed by computer program instructions to perform the method." Id. That text is a quote from Plaintiff's '687 patent. See Tr. at 67:7-9, 78:18-25, 79:13-20. Plaintiff's counsel admitted at oral argument that the text was copied from Claim 23 of the '687 patent and therefore does not describe a functionality of Super Chat. Tr. at 78:18-25, 79:13-20. But the exhibit purposely gives the mistaken impression that the text immediately under the logo and website link describes a functionality of Super Chat that is also present in Claim 23 of Plaintiff's patent.

Moreover, had Plaintiff's counsel conducted a reasonable pre-suit investigation, he would have discovered that Super Chat could not infringe Claim 23, because it does not meet every element of the claim. Claim 23 requires "uncapped engagement of the content." ECF No. 1-2 at Row 23-1. Conversely, Super Chat *limits* engagements with network content. As Defendant explained in its February 12, 2024 letter to Plaintiff (see ECF No. 26-5 at 7-8), the actual content of the website that Plaintiff included in Exhibit B demonstrates that engagements with network content are capped. ECF No. 26-5 at 13-14; Tr. at 67:14-21. Those caps are in the form of monetary limits: "[e]very Super Chat user in the United States is limited to purchasing no more than $500 worth of Super Chats per 24-hour period and no more than $2,000 worth of Super Chats in any given seven-day period." ECF No. 20 at 22. To be sure, both Super Chat and the

'687 patent require users to have "resources." See, e.g., ECF No. 1-1 at 9 (explaining that the "system may provide engagements in exchange for user resources"). But Super Chat imposes a daily limit on those resources: a $500 or $2,000 cap depending on the length of the time period. By contrast, the '687 patent allows for "uncapped (i.e., unlimited) engagements" so long as "the user has sufficient resources," which means that a user with substantial financial resources can purchase an unlimited number of engagements because there is no cap on the ability to obtain "resources."

At oral argument, Plaintiff's counsel contended that the meaning of "uncapped" or "resources" in the '687 patent is an issue for a claim construction hearing. Tr. at 35:18-25, 66:1-5. However, the purpose of a claim construction hearing (otherwise known as a Markman hearing), "is to allow a court to examine and resolve disputes over the scope and meaning of the claim language in [a] patent." Furnace Brook LLC v. Overstock.com, Inc., No. 05-CV-7329 (CLB), 2006 WL 2792692, at *1 (S.D.N.Y. Sept. 27, 2006), aff'd, 230 F. App'x 984 (Fed. Cir. 2007); see also Novartis Vaccines & Diagnostics, Inc. v. Regeneron Pharms., Inc., No. 18-CV-2434 (DLC), 2019 WL 1274790, at *5-9 (S.D.N.Y. Mar. 20, 2019) (concluding that disputed terms such as "vector for expression," "origin of replication," "the first intron," and "isolated nucleic acid molecule" required a Markman hearing); Revlon Consumer Products Corp. v. Estee Lauder Companies, Inc., No. 00-CV-5960 (RMB) (AJP), 2003 WL 21751833, at *14 (S.D.N.Y. July 30, 2003) (explaining that a Markman hearing "may be helpful when the claims are ambiguous or the technology is complex"). But the term "uncapped" is not ambiguous. The term is defined in the '687 Patent as "unlimited," and nor is it a highly technical term. See ECF No. 1-1 at 2; Revlon Consumer Prods. Corp., 2003 WL 21751833, at *14 ("A Markman hearing to interpret the claim language is unnecessary in this case, because the sole disputed claim term—

14

'completely coated'—is neither ambiguous nor highly technical") (internal quotation marks omitted); <u>Rogers v. Desa Int'l, Inc.</u>, 166 F. Supp. 2d 1202, 1205 (E.D. Mich. 2001), <u>aff'd</u>, 198 F. App'x 918 (Fed. Cir. 2006) (finding no reason to hold a <u>Markman</u> hearing "[g]iven the lack of technical and linguistic complexity and lack of conflicting factual evidence").

In short, the complaint fails to allege that Super Chat "meet[s] each and every element of at least one claim of the asserted patents." <u>Invincible IP LLC</u>, 2022 WL 3668322, at *1. But more significantly, Plaintiff's counsel either did not make a reasonable effort to ascertain whether Super Chat infringed Claim 23 of the patent prior to filing this suit or ignored information in the very website it cited in Exhibit B to the complaint. Publicly available information on Defendant's website explained that Super Chat imposed limitations on engagements, in the form of monetary caps, and thus Super Chat did not offer unlimited engagements, as required to meet every element of Claim 23.

Beyond the failure to plausibly allege a claim of patent infringement, Plaintiff's complaint also contains a false allegation. In paragraph 7, Plaintiff alleges that "[o]n March 22, 2016 EscapeX met with Lyor Cohen to demonstrate EscapeX's patented 'Super Star' system and method," and during that meeting, EscapeX "presented the 'Escapex White Paper'" to Cohen. ECF No. 1 at ¶ 7. In paragraph 13, Plaintiff further alleges that "Defendant has known of the '687 patent and the technology underlying it from at least the hiring of Mr. Cohen as head of Youtube Music in December 2016 due to Escapex' presentation of the Escapex White Paper" to Cohen in 2016. <u>Id.</u> at ¶ 13. Plaintiff reiterates the same allegation concerning Defendant's

knowledge of the '687 patent in paragraph 14 of the complaint. <u>Id.</u> at ¶ 14. All of these allegations are false.

On March 22, 2016, at the time of the meeting with Cohen, Plaintiff did not have a "patented Super Star system and method." <u>Id.</u> at ¶¶ 7, 8. Plaintiff did not submit a patent application for that technology until December 5, 2016, nine months after the meeting with Cohen. ECF No. 25 at 19-20. And Plaintiff's patent was not issued until November 12, 2019, almost three years after the meeting with Cohen. ECF No. 1 at ¶ 8; ECF No. 25 at 20.

Further, the white paper annexed to the complaint (<u>see</u> ECF No. 1-3), which the complaint alleges was given to Cohen in March 2016 (<u>see</u> ECF No. 1 at ¶¶ 7, 13, 14), could not have been given to Cohen at that time. In fact, the white paper annexed to the complaint did not exist at the time of the 2016 meeting. First, the white paper annexed to the complaint describes the '687 patent by its patent number, which was not issued until December 2019, several years after the March 2016 meeting. ECF No. 25 at 20; ECF No 1-3 at 14. Second, the white paper references other patents that were issued after March 22, 2016, such as: U.S. Patent No. 10,140,365 issued on November 17, 2018 (<u>see</u> ECF No. 1-3 at 17), U.S. Patent No. 9,519,690 issued on December 13, 2016 (<u>see</u> ECF No. 1-3 at 12), and U.S. Patent No. 9,465,869 issued on October 11, 2016 (<u>see</u> ECF No. 1-3 at 19).[7] Third, the white paper includes social media comments from 2019. ECF No. 1-3 at 47. Lastly, the white paper includes a "Roadmap" discussion that begins in 2019. <u>Id.</u> at 54-55.

During oral argument, Plaintiff's counsel acknowledged that the white paper annexed to the complaint could not have been provided to Cohen in March 2016. Tr. at 81:16-17. Yet, the

---

[7] <u>See</u> <u>Sephi Joseph Shapira Inventions, Patents and Patent Applications</u>, <u>supra</u>, note 3.

complaint alleges that it *was* provided to Cohen. ECF No. 1 at ¶¶ 7, 13, 14. Plaintiff's counsel attempted to shift the blame for the false allegation to Plaintiff (Tr. at 81:17-21), stating that "our client has told us that they gave that document that's only been slightly updated to add the patent numbers so that the . . . contents are the same." Id. As an initial matter, the white paper could not have been "only . . . slightly updated to add the patent numbers," because the white paper includes a roadmap discussion and social media comments from 2019. But more importantly, counsel had an independent basis to assure himself that he had a factual bases for the allegations in the complaint concerning the white paper. See Craig v. City of New York, No. 20-CV-02152 (LDH) (PK), 2022 WL 2238451, at *15 (E.D.N.Y. June 22, 2022) (explaining that a lawyer "must independently research the factual and legal bases for any papers filed with the Court to satisfy her obligation of making inquiry reasonable under the circumstances") (internal quotation marks omitted); Miller v. Schweickart, 413 F. Supp. 1059, 1061 (S.D.N.Y. 1976) ("Lawyers have a responsibility before subscribing their names to complaints which contain serious charges to ascertain that a reasonable basis exists for the allegations, even if they are made upon information and belief."). And a mere reading of the white paper would have demonstrated to counsel that it could not have existed in March 2016, his client's representation to the contrary notwithstanding.[8]

The allegation that Defendant knew of the patented technology at the time of the alleged infringement is significant because, if proven, it would support an award of enhanced damages for willful infringement. "Section 284 of the patent statute provides that damages may be

---

[8] Plaintiff submitted a sworn declaration from Sephi Shapira, the inventor of the '687 patent. ECF No. 30-9. Shapira's declaration states that he met with Cohen on March 22, 2016, and "presented [Plaintiff's] patented SuperStar technology." Id. This also cannot be true because, as discussed, in March 2016 Plaintiff had not yet even submitted an application for a patent and thus could not have had "patented" technology.

enhanced up to three times the compensatory award . . . where the infringer acted in wanton disregard of the patentee's patent rights, that is, where the infringement was willful." <u>Metso Mins., Inc. v. Powerscreen Int'l Distribution Ltd.</u>, 833 F. Supp. 2d 333, 337 (E.D.N.Y. 2011) (internal quotation marks omitted). "Knowledge of the patent alleged to be willfully infringed [is] a prerequisite to enhanced damages." <u>WBIP, LLC v. Kohler Co.</u>, 829 F.3d 1317, 1341 (Fed. Cir. 2016). Plaintiff attempted to allege that Defendant had knowledge of the patent—vis-à-vis the 2016 meeting with Cohen—seemingly to establish that any infringement was willful and ultimately obtain an award of enhanced damages. But willfulness requires knowledge of the specific patent alleged to be infringed, and not mere knowledge of the underlying technology. <u>See</u> <u>Signify N. Am. Corp. v. Axis Lighting Inc.</u>, No. 19-CV-5516 (DLC), 2020 WL 2079844, at *1 (S.D.N.Y. Apr. 30, 2020) (reasoning that knowledge of the patent is necessary to allege willful infringement); <u>GeigTech E. Bay LLC v. Lutron Elecs. Co.</u>, No. 18-CV-5290 (CM), 2024 WL 3595413, at *10 (S.D.N.Y. July 30, 2024) ("[A] party cannot be found to have willfully infringed a patent of which the party had no knowledge.") (internal quotation marks omitted); <u>Novartis Vaccines & Diagnostics, Inc. v. Regeneron Pharms., Inc.</u>, No. 18-CV-2434 (DLC), 2018 WL 5282887, at *3 (S.D.N.Y. Oct. 24, 2018) (finding that willful infringement was not pled because "[n]oticeably absent from the [complaint] are allegations that [plaintiff] took steps to affirmatively make [defendant] aware of the existence of the . . . Patent"). Presumably this explains the inclusion in the complaint of the allegation that Defendant had knowledge of Plaintiff's patented technology after the Cohen meeting, even though the technology was not yet patented and the patent did not issue until several years after the 2016 meeting.

Although Defendant has established that Plaintiff's counsel filed a claim that was entirely without color, an award under § 1927 also requires a finding of bad faith. <u>See</u> <u>Oliveri</u>, 803 F.2d

at 1272. "Bad faith can be established by inference from a party's decision to pursue completely meritless claims." Craig v. UMG Recordings, Inc., 380 F. Supp. 3d 324, 330 (S.D.N.Y. 2019) (citing In re 60 E. 80th St. Equities, Inc., 218 F.3d 109, 116 (2d Cir. 2000)); see also Eisemann v. Greene, 204 F.3d 393, 397 (2d Cir. 2000) (per curiam) (noting that bad faith may be inferred from the meritlessness of a motion). Here, bad faith can be inferred from Plaintiff's decision to commence a suit based on a patent-infringement claim that lacked any colorable basis. Additionally, the false allegations in the complaint concerning the Cohen meeting and the white paper further support an inference of bad faith. Baker, 431 F. Supp. 2d at 363-64 (explaining that plaintiff's "bad faith motivation" for commencing the suit "may be inferred from false allegations in the complaint").

But there is more. Bad faith can also be inferred from counsel's failure to dismiss the complaint or amend it, after being alerted to the deficiencies in the complaint on February 12, 2024. See ECF No. 26-5; see also Liebowitz v. Bandshell Artist Mgmt., 6 F.4th 267, 282-83 (2d Cir. 2021) (explaining that an attorney who "continue[s] to defend" a complaint after learning of facts rendering the complaint "fatal[ly] flaw[ed]" has engaged in bad faith conduct). When confronted with the complaint's fundamental flaws, counsel had a duty to act promptly to correct or dismiss the action, yet he failed to do so. See Liebowitz, 6 F.4th at 282-83 (finding bad faith where attorney "did not promptly move to amend the complaint" once put on notice of defect in complaint); Gambello v. Time Warner Commun., Inc., 186 F. Supp. 2d 209, 230 (E.D.N.Y. 2002) (imposing sanctions on plaintiff's counsel because "it was incumbent upon counsel . . . to withdraw any claims that became unsupportable").

Instead, between February 12, 2024, and March 11, 2024, Plaintiff's counsel took no action despite knowing that the deadline for Defendant to respond to the complaint was

approaching. Plaintiff's counsel multiplied the proceedings unnecessarily by forcing Defendant to expend time and money to file a motion to dismiss. ECF No. 25 at 22; Tr. at 26:4-12, 28:11-16.

Plaintiff filed the complaint on December 13, 2023. See ECF No. 1. On January 4, 2024, Defendant's counsel sought and obtained an extension of time to respond to the complaint, until March 11, 2024. ECF Nos. 11, 14. On February 12, 2024, Defendant's counsel sent a letter to Plaintiff's counsel outlining the deficiencies in the complaint. ECF No. 26-5. Among other arguments, the letter explained that (1) Plaintiff fails to plead a claim of infringement because "[t]he claims of the '687 patent require that 'engagements' with social media content be 'uncapped,' yet there is always a cap on Super Chat," and (2) the white paper annexed to the complaint "could not have possibly been presented to Mr. Cohen at the alleged March 2016 meeting because the white paper is replete with indications that it did not exist in March 2016." Id. at 2, 9. The letter requested that Plaintiff dismiss the case or, at a minimum, not oppose Defendant's forthcoming motion to transfer the case to the Northern District of California. Id. at 3.

Having received no response, Defendant's counsel sent an e-mail to Plaintiff's counsel on February 20, 2024, explaining that Defendant was "incurring significant fees and expenses preparing the motions [to dismiss and transfer venue] outlined in [the] February 12, 2024 letter." ECF No. 26-28 at 6. Plaintiff's counsel responded that they were "diligently reviewing" and suggested a meet and confer. ECF No. 26-28 at 5. In an e-mail to Plaintiff's counsel dated February 28, 2024, Defendant's counsel summarized the parties' respective positions concerning a potential motion to amend and provided a proposal: Defendant's counsel suggested that "the parties stipulate that [Plaintiff] file its amended complaint on the current answer date (March 11,

2024)," and Defendant will "file any answer or other response within four weeks (i.e., by April 8, 2024)." Id. at 2. Defendant's counsel asked Plaintiff's counsel to confirm "by the end of this week (March 1, 2024)" if Plaintiff agreed to the proposal, because otherwise Defendant's deadline to respond to the complaint was March 11. Id.

Although Plaintiff's counsel indicated that he would respond at the latest by March 1, 2024 (see ECF No. 26-29 at 3), he failed to do so. On March 4, 2024, Defendant's counsel sent another e-mail to Plaintiff's counsel, noting that Plaintiff had not yet filed the amended complaint and Defendant's deadline to respond to the operative complaint was a week away. ECF No. 26-29 at 2. Plaintiff's counsel on March 4, 2024, responded via e-mail, stating that he was "putting together a declaration" and attached part of the declaration's response. Id. at 2, 10-13. Plaintiff's counsel sent no further correspondence to Defendant's counsel and Plaintiff did not file an amended complaint prior to March 11. Defendant thus had no choice but to respond to the complaint by filing a motion to dismiss on March 11, 2024. ECF No. 20 at 7; Tr. at 68-69. Two hours after Defendant filed its motion, Plaintiff voluntarily dismissed the case without prejudice. ECF No. 22; ECF No. 25 at 22.

Defendant should not have been forced to file the motion to dismiss, which further supports an award under § 1927. See Nike, Inc. v. Top Brand Co., 216 F.R.D. 259, 275-76 (S.D.N.Y. 2003) (explaining that Section "1927 sanctions may involve any conduct which generates needless proceedings"); see also Quinby v. WestLB AG, No. 04-CV-7406 (WHP) (HBP), 2005 WL 3453908, at *5 (S.D.N.Y. Dec. 15, 2005) ("The purpose of § 1927 is to deter unnecessary delays in ligation by penalizing attorneys personally."). Despite knowing that Defendant had an upcoming deadline to respond to the complaint and despite having been made aware of the plain deficiencies in the patent-infringement claim, Plaintiff did not act immediately

21

to dismiss or amend the complaint. Instead, Plaintiff's counsel engaged in dilatory tactics which resulted in Defendant having to expend resources in preparing and filing a motion to dismiss. Plaintiff's dismissal of the complaint two hours after Defendant filed its motion to dismiss bolsters the conclusion that Plaintiff unnecessarily multiplied the proceedings, needlessly forcing Defendant to incur the expense of filing a motion to dismiss. See e.g., Baker, 431 F. Supp. 2d at 363-64 (awarding sanctions under § 1927 because plaintiff's counsel knew the claim was facially invalid and yet went back and forth for two weeks on whether he would dismiss the claim or force defendants to file a motion to dismiss); Hudson Motors P'ship v. Crest Leasing Enterprises, Inc., 845 F. Supp. 969, 982 (E.D.N.Y. 1994) (reasoning that assertion of baseless counterclaim was "made in bad faith and unreasonably and vexatiously multiplied" the proceedings by forcing party to move for dismissal of counterclaim).

What's more, an award of sanctions against Plaintiff's counsel would serve the purpose underlying § 1927. "The purpose of [Section 1927] is to deter dilatory tactics, unnecessary delays in litigation, and bad faith conduct by attorneys." Palagonia v. Sachem Cent. Sch. Dist., No. 08-CV-0791 (JS) (ETB), 2010 WL 811301, at *2 (E.D.N.Y. Mar. 1, 2010). Plaintiff's counsel, having been put on notice of the flaws in the complaint by Defendant's February 12 letter, should have, at a minimum, moved to immediately amend to remove the false allegations concerning the white paper. Plaintiff has offered no explanation for why it failed to correct its pleading, requiring Defendant to file a motion to dismiss. "Behavior such as this should be deterred." NetSoc, LLC v. Chegg Inc., No. 18-CV-10262 (RA), 2020 WL 7264162, at *5 (S.D.N.Y. Dec. 10, 2020).

Additionally, Plaintiff's counsel's prior conduct in other cases further supports a finding that an award of sanctions is appropriate here. See In re 60 East 80th Street Equities, Inc., 218

F.3d 109, 120 (2d Cir. 2000) (explaining that relevant to the inquiry under § 1927 "is the fact that [counsel's] behavior is repetitive"); Liebowitz, 6 F.4th at 284 (looking to attorney's "custom and practice" of failing to conduct pre-suit investigations and strategy of using "the burdens of litigation to extract settlements, even in frivolous or unmeritorious suits" to support a finding of bad faith under § 1927). An award under § 1927 is intended to "deter the repetition of the sanctionable conduct," as well as to "compensat[e]" the party that unnecessarily incurred the attorney's fees and expenses. Huebner, 2016 WL 6652722, at *3 (internal quotation marks and citations omitted). Plaintiff's counsel, Mr. Ramey, has previously been sanctioned for litigation misconduct.[9] See, e.g., EscapeX IP LLC, 2023 WL 5257691, at *2 (awarding sanctions under § 1927 for filing frivolous Rule 59(e) motion; see also VDPP, LLC v. Volkswagen Grp. of Am., Inc., No. 23-CV-2961, 2024 WL 3856797, at *1 (S.D. Tex. Aug. 13, 2024) (awarding fees under § 1927 where plaintiff "filed a meritless patent infringement suit and continued to litigate it after the defendant . . . pointed out its obvious lack of merit").[10] As other courts have noted, Plaintiff's counsel has a track record of commencing "frivolous suits" against "tech giant[s]" like Google, for the purpose of "forc[ing] a modest settlement . . . on the assumption that the tech giant will prefer to capitulate than fight back."[11] EscapeX IP LLC, 2023 WL 5257691, at *2.

---

[9] As of August 2024, Plaintiff's counsel had been sanctioned at least seven times in four years, totaling at least $810,000. See Legal Fee Tracker: Sanctions Pile Up for Texas Patent Lawyer, Reuters (Aug. 22, 2024), https://www.reuters.com/legal/litigation/legal-fee-tracker-sanctions-pile-up-texas-patent-lawyer-2024-08-22/ (last visited Mar. 15, 2025).

[10] There is a pending motion under § 1927 and for attorney's fees under 35 U.S.C. § 285 against Plaintiff's counsel in this District in AML IP, LLC v. Aero Global, LLC, No. 23-CV-11264 (DEH), Dkt. 49 (S.D.N.Y. Dec. 16, 2024).

[11] Defendant contends that this suit was commenced by Plaintiff to gain leverage over Defendant in the then-pending suit in the Northern District of California. ECF No. 25 at 7; Tr. at 10:12-20, 11:12-24, 12:2-19, 13:1-10, 14:1-13. At the time Plaintiff filed suit here, Defendant had already been awarded fees under 35 U.S.C. § 285 and had a pending motion under § 1927 in

Further, under 35 U.S.C. § 285 courts have awarded fees in cases brought by Plaintiff's counsel, recognizing the cases as exceptional and concluding that fees were appropriate because counsel had commenced a baseless suit, failed to conduct an adequate pre-suit investigation, and/or engaged in dilatory conduct. See, e.g., EMED Techs. Corp. v. Repro-Med Sys., Inc., No. 18-CV-05880 (LGS) (RWL), Dkt. 167 at 21-25 (S.D.N.Y. Nov. 12, 2019) (awarding almost $1 million in fees and expenses in a case where Plaintiff's counsel brought a claim that "was objectively baseless from the start" and "pursue[d] litigation without an objectively reasonable basis"); WPEM, LLC v. SOTI Inc., No. 18-CV-00156 (JRG), 2020 WL 555545, at *3 (E.D. Tex. Feb. 4, 2020), aff'd, 837 F. App'x 773 (Fed. Cir. 2020) (awarding fees under § 285 in case brought by Plaintiff's counsel, finding that plaintiff "conducted *absolutely no* pre-filing investigation into the validity or enforceability of the Asserted Patent") (emphasis in original); NetSoc, LLC, 2020 WL 7264162, at *4 (awarding fees under § 285 where Plaintiff's counsel ignored deficiency in patent-infringement claim for "three months after being informed of the error"); see also Koji IP, LLC v. Renesas Elecs. Am., Inc., No. 24-CV-03089 (PHK), 2024 WL 4008753, at *1 (N.D. Cal. Aug. 29, 2024) (issuing an order to show cause against Plaintiff's counsel and others as to why they should not be referred to the State Bar of California for the unauthorized practice of law and sanctioned pursuant to Rule 11 and the court's inherent authority). For example, in ZT IP, LLC v. VMware, Inc., No. 22-CV-0970, 2023 WL 1785769, at *2-3 (N.D. Tex. Feb. 6, 2023), the court concluded that the case was exceptional because Plaintiff's counsel, Mr. Ramey, had failed to conduct an adequate pre-suit investigation that would have uncovered information demonstrating that the patent-infringement claim lacked

---

the Northern District of California. Tr. at 13:20-22, 14:1-21; see also EscapeX IP LLC, 2023 WL 5257691, at *2; EscapeX IP LLC, 2024 WL 557729, at *1.

merit and also "unreasonably continued pursuing" the claim despite notice from the defendant that the claim lacked a colorable basis. The conduct by Plaintiff's counsel's here is part of a long pattern of similar behavior that warrants deterrence through an award under § 1927.

    B.  <u>Sanctions Under the Court's Inherent Power</u>

Defendant also moved for sanctions under the court's inherent power. ECF No. 24. "[A] court should not exercise its inherent powers to sanction if appropriate sanctions can be imposed under Rule 11 or [28] U.S.C. § 1927." <u>DeFrancesco v. Mirador Real Est.</u>, No. 18-CV-4032 (VSB) (KHP), 2019 WL 5722120, at *4 (S.D.N.Y. July 15, 2019), <u>adopted by</u>, 2022 WL 203147 (S.D.N.Y. Jan. 24, 2022); <u>see also</u> <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 50 (1991) ("[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power."). Because a sanctions award under § 1927 is appropriate, Defendant's motion for sanctions under the Court's inherent power, as against Plaintiff's counsel, is denied.

    Whereas § 1927 applies only to an attorney, an award made under the Court's inherent power may be made against a party. <u>See</u> <u>Oliveri</u>, 803 F.2d at 1273. At oral argument, Defendant's counsel requested an opportunity to further address whether a sanctions award under the Court's inherent power against Plaintiff was appropriate, if a sanctions award was obtained against Plaintiff's counsel. Tr. at 29:1-9, 75:19-25, 76:1-3. As such, Defendant's motion for sanctions against Plaintiff under the Court's inherent power is denied without prejudice. If Defendant wishes to continue pursing sanctions against Plaintiff under the Court's inherent power, Defendant is directed file a supplemental letter motion by **April 18, 2025**.

Finally, to calculate an award of attorney's fees, courts in this Circuit require that the prevailing party produce "contemporaneous time records indicating, for each attorney, the date,

the hours expended, and the nature of the work done." <u>Scott v. City of N.Y.</u>, 626 F.3d 130, 133-34 (2d Cir. 2010) (citation omitted). Further, a party seeking an award of costs must substantiate its request for costs. <u>Euceda v. Preesha Operating Corp.</u>, No. 14-CV-3143 (ADS) (SIL), 2017 WL 3084490, at *4 (E.D.N.Y. June 30, 2017) ("In the absence of adequate substantiation, a party is not entitled to recover costs."), <u>adopted by</u>, 2017 WL 3084408 (E.D.N.Y. July 18, 2017).

Defendant's counsel has not submitted contemporaneous billing records to support Defendant's request for attorney's fees or documents to substantiate Defendant's requests for costs. Accordingly, Defendant is directed to submit such documentation by **<u>April 7, 2025</u>**.

## CONCLUSION

For the foregoing reasons, Defendant's motion for sanctions under 28 U.S.C. § 1927 is

**GRANTED**. Defendant's motion for sanctions under the Court's inherent power as against

Plaintiff's counsel is **DENIED**. Defendant's motion for sanctions under the Court's inherent

power as against Plaintiff is **DENIED** without prejudice. The Clerk of Court is respectfully

directed to terminate the motion at ECF No. 24.

    **SO ORDERED**

DATED:    New York, New York
        March 24, 2025

_____
VALERIE FIGUEREDO
United States Magistrate Judge

27